Jones, Judge:
This claim was filed in this Court on October 27, 1967 and came on for hearing on April 8, 1968, at which time the respondents tendered and asked leave to file a stipulation in writing that all of the facts alleged in the claimant’s petition are true. Said stipulation was duly filed and thereupon the claim was submitted for decision upon the record.
It appears from the claimant’s petition that on or about May 5, 1966, the claimant was invited by the liquor commissioners of Norway and Finland to participate in a Joint Liquor Administrators Study Conference and inspection of the Liquor Control operations in three Scandinavian countries, from June 12-20, 1966; that this conference was coordinated and planned by the National Alcoholic Beverage Control Association, Inc., of which the State of West Virginia is a member; that by letter dated June 6,1966, the Honorable Hulett C. Smith, Governor of the State of West Virginia, and Chairman of the Board of Public Works and the Out-of-State Travel Board, approved said trip and requested a full report upon the claimant’s return; that the claimant departed New York on June 8, 1966, and visited Italy, Sweden, Norway, Denmark, France and England before returning to New York on June 28, 1966 in pursuance of a schedule furnished Governor Smith prior to receipt of the Governor’s letter of approval; that the travel was undertaken for and on behalf of the State of West Virginia and in connec *98 tion with the claimant’s official duties; that on August 17, 1966, the claimant submitted a travel voucher seeking reimbursement for expenses in the amount of $803.79; that on August 18, 1966, the Honorable Denzil L. Gainer, Auditor of the State of West Virginia, refused to issue the State’s warrant in payment of the voucher upon grounds that the claimant had not obtained the prior approval of the Board of Public Works as required by its rules and regulations, and that the meeting was not a meeting of an association or organization not requiring such prior approval; and the claimant further alleges that he paid the sum of $803.79 out of his personal funds for travel undertaken for the State of West Virginia and that he acted in good faith in relying upon Governor Smith’s approval and permission.
It further appears from the exhibits filed and the Court’s independent investigation that the State Administrators of West Virginia, Pennsylvania, Michigan and Washington and the National Administrators of Finland, Norway and Sweden participated in the conference; that no claim was made for expenses to New York; that the major portion of the claim is for travel, with the remainder being for hotel accommodations; that all other expenses were paid for by the host countries; and that upon his return the claimant made a detailed and extensive report to the Governor, which was released for public scrutiny.
Pursuant to Chapter 137, Acts of the Legislature 1965, relating to travel expenses, the Board of Public Works promulgated rules and regulations concerning out-of-state travel by state officials and employees, Section VI of which provides as follows:
“Costs for out-of-state travel will be reimbursed only for travel deemed necessary for the proper conduct of the State’s business and will require the certification of the department head before reimbursement is made. Prior approval of the Board of Public Works will be required for travel and attendance to any meeting outside the State, except to those meetings of associations or organizations for which membership for the State of West Virginia has been approved by the Board of Public Works.”
The claimant did not obtain the prior approval of the Board of Public Works, and in the opinion of the Auditor, the travel *99 did not come within the exception to the rules and regulations which applies to meetings of associations for which membership of the State of West Virginia has been approved by the Board of Public Works. West Virginia is a duly approved member of the National Alcoholic Beverage Control Association, Inc., and the question arises as to whether the “study conference” was a meeting of the association within the meaning of the rules and regulations. This was not a meeting of all members of the association, but the study was intended to be for the benefit of all members, including West Virginia, and perhaps was of greater benefit to those states whose representatives actively participated. The fact that the Study Conference covered several countries in Europe did not make it any less a meeting.
We are of the opinion that this was not such a meeting as is contemplated by the exception hereinabove noted. However, there is room for interpretation and enough uncertainty to give support to the claimant’s assertion that he acted in good faith. There are other substantial extenuating circumstances. The chief executive officer of the State, who was also Chairman of the Board of Public Works and Chairman of the Out-of-State Travel Board, approved participation in the Study Conference as “worthwhile” and “beneficial”, and those in authority in the states of Pennsylvania, Michigan and Washington, apparently concurred. The claimant’s letter to the Governor requesting approval of the trip specifically stated that “I will be traveling at State expense.”
The respondents have stipulated that the travel was undertaken for and on behalf of the State and in conjunction with the claimant’s official duties, and that the claimant acted in good faith. Therefore, it follows that the State has received the benefits arising from the expenditures in question. While we disapprove the procedure followed by the claimant, and there is the obvious temptation to make an example of the claimant for other officials and employees for the sake of strict compliance with the travel rules and regulations in the future, we are impressed in this case by the admitted good faith of the claimant, the opportunity for honest error in the interpretation of the rules and regulations, the cogent fact that the conduct of the claimant was approved in advance by the Governor *100 of West Virginia, and the undenied assertion that the State of West Virginia derived benefits from the expenditures for which reimbursement is sought.
Chapter 14, Article 2, Section 13 of the Code of West Virginia extends the jurisdiction of this Court to claims “which the State as a sovereign commonwealth should in equity and good conscience discharge and pay.” After consideration of the petition, the exhibits, the stipulation of the parties admitting claimant’s allegations and the Court’s independent findings, it is our opinion that the claimant has proved a valid claim against the office of the Alcoholic Beverage Control Commissioner, which in equity and good conscience should be paid; and it is the Court’s judgment that the claimant, Clarence C. Elmore, should recover, and he is hereby awarded the sum of $803.79.